IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LOCALS 302 AND 612 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS CONSTRUCTION INDUSTRY HEALTH AND SECURITY FUND; LOCALS 302 AND 612 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS-EMPLOYERS CONSTRUCTION INDUSTRY RETIREMENT FUND; and WESTERN WASHINGTON OPERATING ENGINEERS-EMPLOYERS TRAINING TRUST FUND**, <br><br> Plaintiffs, <br><br> v. <br><br> **ROSS ISLAND SAND & GRAVEL CO.**, an Oregon corporation, <br><br> Defendant. | Case No. 3:23-cv-01060-IM <br><br> **OPINION AND ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT** |

Jeffrey G. Maxwell, Barlow Coughran Morales & Josephson, P.S., 1325 4th Ave., Suite 910, Seattle, WA 98101. Attorney for Plaintiffs.

PAGE 1 – OPINION AND ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT

**IMMERGUT, District Judge.**

In this case, Plaintiffs, three trust funds, accuse Defendant Ross Island Sand & Gravel of breach of contract and violating the Employee Retirement Income Security Act of 1974 ("ERISA"). Specifically, before this Court is Plaintiffs' Motion for Default Judgment, ECF 12. To date, Defendant has yet to appear in this case, despite that Plaintiffs filed their Complaint, ECF 1, on July 19, 2023. On September 29, 2023, the Clerk of this Court entered default against Defendant, ECF 11, and on October 20, 2023, Plaintiffs filed their Motion for Default Judgment. For the following reasons, Plaintiffs' Motion is GRANTED.

## BACKGROUND

The following background is taken from allegations in Plaintiffs' Complaint, ECF 1.[1] Plaintiffs are three Seattle-based trust funds established under § 302 of the Labor Management Relations Act, 29 U.S.C. § 186(c): Locals 302 and 612 of the International Union of Operating Engineers Construction Industry Health and Security Fund ("Health Trust"), Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Fund ("Retirement Trust"), and Western Washington Operating Engineers-Employers Training Trust Fund ("Training Trust"). Complaint, ECF 1 ¶¶ 1.1–1.3. The Health Trust was created to provide one or more benefit plans under ERISA that maintain hospital, medical, surgical, dental, vision, disability, or death benefits and any other similar benefits for the benefit of the

---

[1] Upon default, this Court accepts all well-pleaded factual allegations of the complaint as true, except those relating to the amount of damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (citation omitted). The court, however, does not accept as admitted legal conclusions or facts that are not well-pleaded. *DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (citation omitted). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

PAGE 2 – OPINION AND ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT

participants and their beneficiaries. *Id.* ¶ 1.1. The Retirement Trust was created to provide one or more benefit plans under ERISA that provide retirement and associated death benefits for the participants and their beneficiaries. *Id.* ¶ 1.2. The Training Trust was created to provide instruction, training, and re-training of employees or persons who wish to become employees. *Id.* ¶ 1.3.

On or around June 1, 2022, Randall H. Steed, President and Chief Operating Officer of Defendant, signed two contracts at issue in this action. *Id.* ¶¶ 3.1–3.2. First, Steed executed a Compliance Agreement on behalf of Defendant with Local 612 of the International Union of Operating Engineers ("Union"), thus binding Defendant to the 2021–2024 Agreement between Associated General Contractors of Washington and Operating Engineers Local 612 ("AGC Master Labor Agreement"). *Id.* ¶ 3.1. Second, Steed executed the 2021–2024 Dredge Agreement Washington ("Dredge Agreement") with the Union. *Id.* ¶ 3.2. The AGC Master Labor Agreement and Dredge Agreement both require Defendant to pay fringe benefit contributions to Plaintiffs for each hour of covered work performed by Defendant's employees. *Id.* ¶ 3.3. The Agreements also require Defendant to withhold union dues from covered employees' paychecks and remit them to Plaintiffs each month. *Id.* ¶ 3.6.

To each Plaintiff, Defendant is obligated to submit remittance reports and contributions payments by the 15th day of the calendar month for the preceding month's activity. *Id.* ¶¶ 3.8–3.10. For any untimely payments Defendant is required to pay liquidated damages of twelve percent in an amount not less than $25.00 on all delinquent contributions, interest of twelve percent on any late payments to Plaintiffs, and Plaintiffs' attorney's fees and costs of collection. *Id.*

PAGE 3 – OPINION AND ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT

Defendant reported fringe benefit contributions for the period August 1, 2022 through December 31, 2022, but has not fully paid those benefits to Plaintiffs. *Id.* ¶ 3.13.

Plaintiffs filed their Complaint on July 19, 2023. Complaint, ECF 1. On August 1, 2023, Plaintiffs served Defendant through its President and Chief Operating Officer with a copy of the Complaint and summons. Affidavit of Service of Summons, ECF 7 at 1. The deadline to appear or file an answer was August 22, 2023, and Defendant did not file any responsive pleadings or otherwise appear before the 21-day deadline. *See id.* On September 25, 2023, Plaintiffs moved for Entry of Default, ECF 9. The Clerk entered Defendant's default under Federal Rule of Civil Procedure 55(a) on September 29, 2023. Clerk's Entry of Default, ECF 11. Plaintiffs then moved for Default Judgment on October 20, 2023. Motion for Default Judgment, ECF 12.

## DISCUSSION

This Court grants Plaintiffs' Motion for Default Judgment. Section A explains that this Court has jurisdiction over this matter. Section B explains that Plaintiffs have satisfied Rule 55's procedural prerequisites to moving for default judgment. And Section C explains that default judgment is appropriate here.

**A. This Court Has Jurisdiction Over this Case and Defendant**

This Court is satisfied that it has personal jurisdiction over Defendant based on the facts in this record. A district court "has an affirmative duty" to determine whether it has subject matter jurisdiction and personal jurisdiction over the defendant before entering a default judgment. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The court "may dismiss an action *sua sponte*" where personal jurisdiction does not exist. *Id*.

Plaintiffs have alleged sufficient facts to support the exercise of general personal jurisdiction here. A court can exercise general jurisdiction over a corporate defendant in any

forum where the defendant "is 'essentially at home.'" *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation is generally "at home" in its place of incorporation and principal place of business. *Id.* at 137 (citations omitted). According to the Complaint, Defendant is an Oregon corporation with its principal place of business in Portland, Oregon. Complaint, ECF 1 ¶ 1.5. Accordingly, this Court possesses personal jurisdiction over Defendant.

This Court is also satisfied that it has subject matter jurisdiction. Federal courts may hear suits that raise a federal question. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted). Plaintiffs' Complaint contains a well-pleaded federal claim under ERISA. Complaint, ECF 1 ¶¶ 2.1, 4.4–4.6. This Court has exclusive jurisdiction of claims asserted under § 502(e)(1) of ERISA, codified at 29 U.S.C. § 1132(e)(1). Thus, this Court has federal question jurisdiction over Plaintiffs' ERISA claim. This Court also has supplemental jurisdiction over Plaintiffs' Oregon law Breach of Contract claim, as it arises out of a common nucleus of operative fact: Defendant's failure to remit fringe benefits and union dues to Plaintiffs. 28 U.S.C. § 1367(a); *see also Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003).

**B.  Procedural Requirements**

Plaintiffs have satisfied the requirements of Local Rule 55 and Federal Rule of Civil Procedure 55. Plaintiffs requested and received the Clerk's entry of default. Motion for Entry of Default, ECF 9; Clerk's Entry of Default, ECF 11. Defendant is neither a minor nor incompetent.

PAGE 5 – OPINION AND ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT

*See* Complaint, ECF 1. Defendant has not appeared personally or by a representative, so it is not entitled to written notice of the application for default judgment. Fed. R. Civ. P. 55(b); *see also Stephen Wurth Photography, Inc. v. Wetpaint.com, Inc.*, Case No. SA CV 16-2101-DOC (JDEx), 2018 WL 5266861, at *2 (C.D. Cal. Oct. 5, 2018) (determining plaintiffs' "procedural compliance").

The relief granted in default judgment is limited to what is demanded in the pleadings. Fed. R. Civ. P. 54(c). The remedies requested in the instant motion "are not different from and do not exceed the relief prayed for in the Complaint." *Philip Morris USA Inc. v. Banh*, No. CV 03–4043 GAF (PJWx), 2005 WL 5758392, at *6 (C.D. Cal. Jan. 14, 2005); *see* Motion for Default Judgment, ECF 12 at 2.

Finding procedural compliance, this Court now turns to Plaintiffs' Motion for Default Judgment.

**C. Default Judgment under FRCP 55**

After the entry of a defendant's default, a default judgment can be entered in either of two ways. First, the Clerk must enter a default judgment if the plaintiff's claim "is for a sum certain or a sum that can be made certain by computation . . . against a defendant who has been defaulted for not appearing." Fed. R. Civ. P. 55(b)(1). A sum is certain when "no doubt remains as to the amount to which a plaintiff is entitled as a result of the defendant's default." *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 929 (9th Cir. 2004) (citing *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003)).

Second, at its discretion, a court may enter a default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has

identified seven factors to guide a district court's consideration of whether to enter a default judgment ("*Eitel* factors"):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citation omitted). The "starting point," however, "is the general rule that default judgments are ordinarily disfavored." *Id*. at 1472. Because Plaintiffs have moved this Court for default judgment, ECF 12 at 1, this Court will analyze their motion under the discretionary standard of Rule 55(b)(2) and apply the *Eitel* factors. *See* Fed. R. Civ. P. 55(b)(2); Eitel, 782 F.2d at 1471–72. The *Eitel* factors weigh in favor of granting Plaintiffs' Motion for Default Judgment based on violations of ERISA. Each factor is discussed in turn.

### a. Factor 1: Prejudice to Plaintiff

The first *Eitel* factor "considers whether the plaintiff will suffer prejudice if default judgment is not entered." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Given Defendant's failure to cooperate in this lawsuit and Plaintiffs' lack of alternative avenues of recovery, Plaintiffs will suffer prejudice if default judgment is not entered. This factor weighs in favor of default judgment. *See Garcia v. Pacwest Contracting LLC*, Case No. 3:12-cv-01930-SI, 2016 WL 526236, at *3 (D. Or. Feb. 9, 2016) (noting lack of "alternative means by which to resolve their present claims" and finding this factor weighed in favor of default judgment (citation omitted)).

### b. Factors 2 and 3: Merits of Plaintiffs' Substantive Claims and Sufficiency of the Complaint

The second and third *Eitel* factors "require that a plaintiff state a claim on which [it] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (quotation marks, citation, and original brackets omitted); *see also Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) ("The second and third *Eitel* factors . . . are often analyzed together." (citation omitted)).

Plaintiffs bring claims under ERISA and common law breach of contract. But Plaintiffs' state-law breach of contract claim is preempted by ERISA. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a); *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2019). State-law claims relate to, or have a "reference to," an ERISA plan if they are "premised on the existence of an ERISA plan or if the existence of the plan is essential to the claim's survival." *Depot, Inc.*, 915 F.3d at 665 (citation and internal quotation marks omitted). Because Plaintiffs' breach of contract claim relates to ERISA employee benefit plans, *see* Complaint, ECF ¶¶ 1 1.1–1.3, 4.1–4.6, ERISA preempts breach of contract here.

However, Plaintiffs have stated a claim under ERISA. ERISA authorizes actions by fiduciaries on behalf of benefit plans (like Plaintiffs) to enforce an employer's obligation to contribute to a multi-employer plan under the terms of the plan or a collective bargaining agreement. 29 U.S.C. §§ 1132(a)(3), (d)(1); 29 U.S.C. § 1145. Plaintiffs' Complaint alleges that Defendant agreed to be bound by three trust fund agreements, requiring Defendant to pay fringe benefits and withhold union dues of the employees for payment into the Trust Funds. Complaint, ECF 1 ¶¶ 3.1–3.17. According to Plaintiffs, Defendant has failed to make the required payments to the Trust Funds. *Id.* ¶¶ 3.11–3.16. Thus, Plaintiffs have adequately pleaded that Defendant is liable under 29 U.S.C. § 1145 for delinquent contributions.

PAGE 8 – OPINION AND ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT

The second and third *Eitel* factors weigh in favor of granting default judgment for Plaintiffs' ERISA claim.

### c. Factor 4: Sum of Money at Stake

The court must "consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "[A] large sum of money at stake would disfavor default judgment." *J & J Sports Prods., Inc. v. Cardoze*, No. C 09–05683 WHA, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010) (citing *Eitel*, 782 F.2d at 1472); *see also Eitel*, 782 F.2d at 1472 (noting three million dollars sought in damages as a factor weighing against granting default judgment). Plaintiffs seek damages of $187,800.29, the value of delinquent payments as well as interest and liquidated damages. Declaration of Ploychanok Kepner ("Kepner Decl."), ECF 13 ¶¶ 11–16. Plaintiffs also request attorney's fees of $10,858.50 and costs of $1,326.64. Declaration of Jeffrey Maxwell, ("Maxwell Decl."), ECF 14 ¶¶ 8–9. This Court does not find this sum to be so large as to "disfavor default judgment." *See J & J Sports Prods.*, 2010 WL 2757106, at *5.

### d. Factor 5: Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor considers whether a dispute of material facts is likely. "Where the [p]laintiff's complaint is well-pleaded and the defendant makes no effort to properly respond, the likelihood of disputed facts is very low." *3M Co. v. Phx. Auto. Refinishing Co.*, CV 17–00649–RSWL–DTB, 2018 WL 1989536, at *5 (C.D. Cal. Apr. 25, 2018) (alteration in original) (citation omitted). Because Plaintiffs' Complaint is well-pleaded and Defendant has failed to timely respond to Plaintiffs' claims, this factor weighs in favor of default judgment.

### e. Factor 6: Whether Default was Due to Excusable Neglect

This factor considers whether the defendant's default was due to excusable neglect. Because Defendant was properly served via corporate officer under Oregon law in August 2023, this factor favors default judgment. Affidavit of Service of Summons, ECF 7; *see Nat'l Photo Grp., LLC v. Pier Corp.*, Case No. SACV 13-1165-DOC (JPRx), 2014 WL 12576641, at *3 (C.D. Cal. Mar. 10, 2014); *3M Co.*, 2018 WL 1989536, at *5.

### f. Factor 7: Strong Policy Preference for Decisions on the Merits

The seventh *Eitel* factor considers the strong policy preference in favor of decisions on the merits. However, "where a defendant's failure to appear 'makes decision on the merits impracticable, if not impossible,' entry of default judgment is warranted." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) (citing *PepsiCo*, 238 F. Supp. 2d at 1177); *see also 3M Co.*, 2018 WL 1989536, at *5. Such is the case here, as Defendant has failed to appear, and also failed to respond to demands for payment by Plaintiffs. *See* Complaint, ECF 1 ¶ 3.15.

Each *Eitel* factor weighs in favor of granting default, so this Court GRANTS default judgment against Defendant Ross Island.

### D. Damages

As this Court does not accept allegations of damages as true, Plaintiffs must prove damages on a motion for default judgment. *See* Fed. R. Civ. P. 55(b)(2). An award of damages cannot be entered in a default judgment without a hearing "unless the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981) (citation omitted).

Upon entry of judgment in favor of a plan governed by ERISA, the Court must award the Trust Funds the following: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) the greater of interest on the unpaid contributions or liquidated damages, not to exceed twenty percent of the unpaid contributions; and (4) reasonable attorney's fees and costs. *See* 29 U.S.C. § 1132(g)(2). The Ninth Circuit has held that award of these items is mandatory, not discretionary, where: (1) defendant was delinquent at the time the action was filed; (2) the court is entering a judgment against defendant; and (3) the plan provides for these awards. *Nw. Adm'rs, Inc. v. Albertson's, Inc.,* 104 F.3d 253, 257 (9th Cir. 1996) (citing *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.,* 875 F.2d 212, 215 (9th Cir. 1989)).

Plaintiffs have satisfied each of these elements and are entitled to an award under ERISA. First, Plaintiffs alleged delinquent contributions under the trust agreements in their Complaint. Complaint, ECF 1 ¶¶ 3.13–3.17. Second, this Court is entering default judgment against Defendant Ross Island. And third, each of the three trust agreements allow for fringe benefit contributions, twelve percent interest on any unpaid contributions, and liquidated damages of twelve percent for any late or unpaid contributions. October 1, 1993 Health Trust Agreement, ECF 13, Ex. 4 at 89–91; April 1, 1993 Retirement Trust Agreement, ECF 13, Ex. 5 at 152–53; March 4, 2004 Training Trust Agreement, ECF 13, Ex. 6 at 206–07.

Plaintiffs ask for damages of $187,800.29 in unpaid fringe benefits and union dues, interest, and liquidated damages. Kepner Decl., ECF 13 ¶¶ 11–15. In support of their request for an award of damages, Plaintiffs submitted remittance reports provided by Defendant for the period August 1, 2022 through December 31, 2022, ECF 13, Ex. 7, and its calculations of interest and liquidated damages for unpaid fringe benefits, ECF 13, Ex. 8.

PAGE 11 – OPINION AND ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT

This Court finds that Plaintiffs have adequately identified the specific damages requested and provided sufficient documentation to meet its burden in establishing damages of $187,800.29 as the unpaid contributions, interest on the unpaid contributions, and liquidated damages allowed under ERISA. *See Plumbers & Pipefitters Nat. Pension Fund v. Eldridge*, 232 F. App'x 680, 683 (9th Cir. 2007) (citing 29 U.S.C. § 1132(g)(2)).

### E. Attorney's Fees and Costs

Plaintiffs also request attorney's fees, which this Court grants with modifications. Motion for Default Judgment, ECF 12 at 7–8. The trust fund agreements binding Defendant allow for attorney's fees. October 1, 1993 Health Trust Agreement, ECF 13, Ex. 4 at 89–91; April 1, 1993 Retirement Trust Agreement, ECF 13, Ex. 5 at 152–53; March 4, 2004 Training Trust Agreement, ECF 13, Ex. 6 at 206–07. ERISA also mandates the award of reasonable attorney's fees and costs to a plan that obtains a judgment. 29 U.S.C. § 1132(g)(2)(D); *Operating Eng'rs Pension Tr. v. Reed*, 726 F.2d 513, 514 (9th Cir. 1984). This award may include compensation for work performed by non-attorneys. *Trs. of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1256–57 (9th Cir. 2006). The court reviews the requested fee award for reasonableness. *See Operating Eng'rs*, 726 F.2d at 514. The lodestar is the preferred method for calculating attorney's fees—the product of the number of hours reasonably spent on the litigation and a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party seeking an award of attorney's fees "has the burden of submitting billing records to establish that the number of hours it has requested [is] reasonable." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Similarly, the fee applicant has the burden of proving that the requested hourly rate is reasonable. *See Camacho v. Bridgeport Fin. Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

PAGE 12 – OPINION AND ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT

The hourly billing records presented by Plaintiffs are reasonable. Plaintiffs request attorney's fees for 32.2 hours of Attorney Jeffrey Maxwell and 16.05 hours of a legal assistant's time. Maxwell Decl., ECF 14, Ex. 9. In support of this request, Attorney Maxwell submitted billing records detailing the time spent on individual tasks. *Id.* Although several of these tasks were before filing the complaint, the Ninth Circuit has explained that attorney's fee awards under ERISA may encompass pre-litigation activities directed toward filing the lawsuit. *See Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 987–88 (9th Cir. 2001). This Court has reviewed the billing records and finds that the requested hours are reasonable.

The hourly rate of the individuals performing Plaintiffs' legal work is also reasonable. Plaintiffs request hourly rates of $285 for Attorney Maxwell[2] and $110 for a legal assistant. Maxwell Decl., ECF 14, Ex. 9. In determining reasonable hourly rates, typically "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (citation omitted). "This District considers the most recent Oregon State Bar Economic Survey ('OSB Survey') as its 'initial benchmark' in determining whether hourly billing rates are reasonable." *Bark v. Northrop*, 300 F.R.D. 486, 493 (D. Or. 2014) (citation omitted); *see also* LR 54-3(a) (noting in the "Practice Tip" that the OSB Survey is the initial benchmark). "If the rate requested exceeds the average rate reported in the OSB Survey, the burden is on the prevailing party to justify that higher rate." *Bark*, 300 F.R.D. at

---

[2] Plaintiffs' declaration includes time entries for Mr. Maxwell at an hourly rate of both $275 and $285 per hour. *See* Maxwell Decl., ECF 14, Ex. 9. This Court has assessed the higher hourly rate for reasonableness. Because the higher rate is reasonable, so too is the lower rate used by Mr. Maxwell.

PAGE 13 – OPINION AND ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT

493 (citation omitted). Attorneys may argue for higher rates based on inflation, specialty, or other factors. LR 54-3.

Plaintiffs have met their evidentiary burden. According to his declaration, Mr. Maxwell has practiced law since 2003, which indicates he has approximately 20 years of experience. *See* Maxwell Decl., ECF 14 ¶ 7. According to the OSB Survey, the median rate for attorneys practicing in the Portland area with 16–20 years of experience is $334.[3] Accordingly, Mr. Maxwell's proposed hourly rate of $285 is reasonable. The Court also finds that the hourly rate of $110 for a legal assistant does not exceed the rates approved in other cases in this district. *See, e.g.*, *J & J Sports Prods., Inc. v. Gonzalez*, Civ. No. 1:17-CV-00678-CL, 2018 WL 1515097, at *3 (D. Or. Feb. 14, 2018) (finding an hourly rate of $150 to be reasonable for a paralegal in the Portland area), *findings and recommendation adopted*, 2018 WL 1512998 (D. Or. Mar. 27, 2018). Accordingly, this Court awards $10,858.50 in attorney's fees.

Finally, based on the invoices attached to Mr. Maxwell's declaration, this Court finds that it is reasonable to award the $402 filing fee, $195 skip tracing fee, $315 process service fee for Defendant's President, and $245 process service fee for Defendant's former registered agent.[4][5]

---

[3] Oregon State Bar, *2017 Economic Survey* 39 tbl. 36 (2017), https://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf (last visited November 6, 2023).

[4] Plaintiffs made an initial attempt to serve Defendant's in-house counsel and registered agent at its Portland, Oregon office, but the office was locked, and no one accepted service. ECF 10 ¶¶ 3–4. Plaintiffs made a second attempt to serve Defendant through its President, which was successful. *Id.* ¶ 5. Accordingly, the two process service fees incurred by Plaintiffs are reasonable.

[5] Although Plaintiffs request costs of $1,326.64, Plaintiffs only provided supporting documentation for costs totaling $1,157. *Compare* Kepner Decl., ECF 14 at 4, *with* Detail Cost Report, ECF 14, Ex. 10. Accordingly, this Court rejects Plaintiffs' request for costs not supported by documentation.

PAGE 14 – OPINION AND ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT

## CONCLUSION

For the reasons stated above, this Court GRANTS Plaintiffs' Motion for Default Judgment.

This Court ORDERS Defendant to pay $187,800.29 in damages and $12,015.50 in attorney's fees and costs.

**IT IS SO ORDERED.**

DATED this 12th day of January, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge